MONTEREY BAY AQUARIUM
FOUNDATION,

    *Defendant-Appellant*,

       v.

BEAN MAINE LOBSTER, INC.,
MAINE LOBSTERMEN'S
ASSOCIATION, INC., MAINE COAST
FISHERMEN'S ASSOCIATION, INC.;
MAINE LOBSTER AND PROCESSING,
LLC D/B/A/ ATWOOD LOBSTER, LLC;
AND BUG CATCHER, INC.

    *Plaintiffs-Appellees*.

No. 25-1772

**PLAINTIFFS-APPELLEES' OPPOSED MOTION TO CERTIFY
QUESTIONS TO THE SUPREME JUDICIAL COURT OF MAINE**

Appellees Bean Maine Lobster, Inc., Maine Lobstermen's

Association, Inc., Maine Lobster and Processing LLC, and Bug Catcher,

Inc. (collectively, "Plaintiffs") hereby move to certify the questions

raised on interlocutory appeal to the Supreme Judicial Court of Maine.

Plaintiffs further request that the Court stay any briefing schedule

pending the resolution of this motion. Plaintiffs have conferred with

counsel for the Monterey Bay Aquarium Foundation (the "Aquarium"),

and the Aquarium opposes this motion.

## PRELIMINARY STATEMENT

This Court granted the Aquarium's petition for interlocutory appeal to address two questions of Maine law. Having determined that the Aquarium's petition raises controlling questions of state law on which there is a "substantial ground for difference of opinion," 28 U.S.C. § 1292(b), this Court should certify those questions to the Supreme Judicial Court of Maine, rather than guess as to how that court would decide the issues.

Both issues raised by the Aquarium in this Section 1292(b) appeal implicate the scope of defamation claims under Maine common law:

1. Whether, as a matter of law, there can be an exception to the group-libel rule that permits defamation claims based on statements 'encompassing an entire industry,' comprising thousands of businesses and individuals; and

2. Whether, as a matter of law, statements based on 'scientific sources' in the context of a public, scientific debate can 'give rise to a defamation claim.'

Pet. for Permission to Appeal ("Pet. Permission") 3, *Monterey Bay Aquarium Found. v. Bean Maine Lobster, Inc., et al.*, No. 25-8012 (1st Cir. Apr. 25, 2025) (alterations omitted). The Aquarium has asserted that these are novel and outcome-determinative issues of law. It has claimed that "Maine courts have not addressed whether a large-scale

industry can avail itself of an exception to [the group defamation rule],"
Mot. to Certify Interlocutory Appeal ("Mot. Certify") 2, *Bean Maine
Lobster, Inc., et al. v. Monterey Bay Aquarium Found.*, ECF No. 64, No.
2:23-cv-00129-JAW (D. Me. 2025), or whether statements regarding
scientific matters "qualify as protected opinion," Pet. Permission 22. It
has also argued that resolution of either question in its favor "would
'terminate the action.'" *Id.* at 9, 19 (citation omitted).

In granting the Aquarium's petition for Section 1292(b) appeal,
this Court necessarily found that the issues it presented are novel,
difficult, and controlling. Those same considerations militate in favor of
review by the state court responsible for answering such questions.
Indeed, the Supreme Court has cautioned federal courts not to
speculate about "novel issues of state law peculiarly calling for the
exercise of judgment by the state courts." *McKesson v. Doe*, 592 U.S. 1, 5
(2020). And Maine's Supreme Judicial Court has said that "[w]herever
reasonably possible, the state court of last resort should be given
opportunity to decide state law issues on which there are no state
precedents which are controlling." *Kneizys v. FDIC*, 290 A.3d 551, 554
(Me. 2023) (cleaned up). Having accepted the Aquarium's argument

that these questions are pivotal and undecided, this Court should invite

Maine's Supreme Judicial Court to answer them.

No briefing schedule has yet been issued in the consolidated

appeal. To conserve the Court's and the parties' resources, Plaintiffs

additionally request that the Court hold any briefing schedule in

abeyance pending resolution of this motion for certification.

## BACKGROUND

The Aquarium runs "Seafood Watch," an internet-based platform

that "publishes recommendations telling consumers and businesses

whether to purchase seafood products" based on supposed

environmental impacts. Compl. ¶¶ 34–35, ECF No. 1.[1] In 2022, the

Aquarium placed Maine lobster on its "red" list—falsely asserting that

the Maine lobster fishery was harming the endangered right whale and

urging consumers to boycott Maine lobster. *Id.* ¶ 8. It did so without any

evidence attributing right whale deaths to Maine lobster fishing

practices—and without disclosing the "scientific data" that

"contradict[s]" its claims." *Id.* ¶¶ 57, 64–68, 91. So when customers and

---

[1] All ECF citations reference the district court docket. *See Bean Maine Lobster, Inc. v. Monterey Bay Aquarium Found.*, No. 2:23-cv-00129-JAW (D. Me.).

business partners cut ties with Plaintiffs because of the Aquarium's accusations, Plaintiffs sued the Aquarium for defamation under Maine law. *Id.* ¶¶ 93–113.

The Aquarium moved to dismiss under Rule 12(b)(6) and Maine's anti-SLAPP statute,14 M.R.S. § 556. *See* Mot. Dismiss, ECF No. 19. The district court denied that motion in a 137-page decision. The court denied the Aquarium's anti-SLAPP motion because Plaintiffs had sufficiently alleged that at least one of the Aquarium's statements was "devoid of any reasonable factual support or any arguable basis in law and . . . caused actual injury." A92–100; *see* 14 M.R.S. § 556. Additionally, the court found that the Plaintiffs had stated a claim for defamation under Maine law. A101–129. First, it concluded that the Plaintiffs had plausibly alleged "special application of the defamatory matter" to them. A108–A111. Second, it found that the Aquarium's statements received no special protection as opinions related to scientific issues. A120–A121.

The Aquarium appealed the denial of the anti-SLAPP motion. And rather than proceed in the ordinary course, the Aquarium sought the extraordinary remedy of interlocutory appeal under Section 1292(b) on

the underlying defamation issues. It successfully urged first the district court and then this court to find that the issues at hand are sufficiently "novel and important" to warrant immediate review. Pet. Permission 25; Mot. Certify 2 (citation omitted). It further argued that "[e]ach issue involves a controlling question of law that the Maine courts and the First Circuit have not decided, and a different conclusion on appeal on either question would end this litigation." Mot. Certify 2; *see also* Pet. Permission 9 ("[S]ubstantial grounds for difference of opinion exist because neither Maine courts nor the First Circuit have addressed [this] issue."); Mot. Certify 5–6 ("Maine courts have not expanded upon these carve-outs to the so-called group libel rule.").

The district court granted the Aquarium's Section 1292(b) motion. This Court granted the Aquarium's petition to appeal over Plaintiffs' opposition, and consolidated review of the merits with the Aquarium's anti-SLAPP appeal. No briefing schedule has issued.

## ARGUMENT

This Court should certify the issues underlying this interlocutory appeal for determination by the Supreme Judicial Court of Maine. Plaintiffs maintain that this case should have proceeded in district

court and not on immediate appeal. But by accepting the Aquarium's interlocutory appeal, this Court necessarily found that the issues presented are novel, difficult, and controlling. *See Caraballo-Seda v. Mun. of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005) (citing 28 U.S.C. § 1292(b)). To the extent these issues warrant interlocutory review, as this Court has now determined, they should be decided by the court responsible for the development of state law.

Federal courts may certify "'potentially outcome-determinative questions of Maine law for which there is no clear controlling precedent in the decisions of the Supreme Judicial Court.'" *Cheng v. Neumann*, 106 F.4th 19, 28 (1st Cir. 2024) (quoting *Mundell v. Acadia Hosp. Corp.*, 92 F.4th 1, 6 (1st Cir. 2024)); *see also* Me. R. App. P. 25; 4 M.R.S. § 57. Of course, federal courts need not certify every state-law question for state-court review. *Cheng*, 106 F.4th at 29. But certification is warranted when "the answer to the question may hinge on policy judgments best left to the state court, and the outcome the court would reach is far from certain." *Id.* at 29 (cleaned up). And in determining whether to answer certified questions, the Supreme Judicial Court

applies two "additional criteria"—whether "no disputes of material fact exist" and the questions could be "determinative." *Id.*

The federal courts of appeals often certify questions involving unsettled principles of state defamation law to state courts of last resort. *See, e.g., Desai v. Charter Comm'ns, LLC*, 835 F. App'x 25, 28–29 (6th Cir. 2020) (whether Kentucky requires imputations of criminality to be defamatory on their face to constitute defamation *per se*); *Adelson v. Harris*, 774 F.3d 803, 811 (2d Cir. 2014) (whether Nevada's fair report privilege applies to a hyperlink to judicial documents); *Cweklinsky v. Mobil Chem. Co.*, 297 F.3d 154, 160–61 (2d Cir. 2002) (whether Connecticut recognizes defamation claims based on compelled self-publication). This Court should do the same.

The Aquarium's own filings demonstrate that certification is the proper course. The Aquarium sought this interlocutory appeal to answer two "novel and important" issues of law. Pet. Permission 25; Mot. Certify 2 (citation omitted). Those questions are:

1. Whether, as a matter of law, there can be an exception to the group-libel rule that permits defamation claims based on statements 'encompassing an entire industry,' comprising thousands of businesses and individuals; and

2. Whether, as a matter of law, statements based on 'scientific sources' in the context of a public, scientific debate can 'give rise to a defamation claim.'

Pet. Permission 3 (alterations omitted).[2] Both are quintessential Maine-law issues regarding the scope of common-law defamation claims. And they are primed for state-court consideration.

By the Aquarium's own telling, these are "outcome-determinative" issues with "no clear controlling precedent" that will require important "policy judgments" to resolve. *Cheng*, 106 F.4th at 28–29 (cleaned up). In seeking an interlocutory appeal, the Aquarium explained "that the Maine courts and the First Circuit have not decided" these issues, Mot. Certify 2; that both implicate "important public policy" concerns, Pet. Permission 18; and that reversal "would end this case," Mot. Certify 8; *see also* Mot. Certify 7–8, 10–11 (discussing policy concerns); Pet. Permission 13, 25 (calling each issue controlling). If these state-law questions are as "pivotal" as the Aquarium says, Mot. Certify 7, they should be answered by the Supreme Judicial Court of Maine, not by a federal court acting in its stead.

---

[2] In the Conclusion to this motion, Plaintiffs present more evenhanded formulations of these questions that would be appropriate for certification to the Supreme Judicial Court of Maine.

Additionally, this Court has already recognized that both issues are significant. Interlocutory appeal under Section 1292(b) is appropriate only for a "controlling question of law" for which there is a "substantial ground for difference of opinion" which may "materially advance the ultimate termination of the litigation." *Caraballo-Seda*, 395 F.3d at 9 (quoting 28 U.S.C. § 1292(b)). In accepting the Aquarium's petition for Section 1292(b) appeal, this Court necessarily found that the issues at hand are novel, difficult, and controlling. Those same considerations counsel in favor of review by the state court responsible for answering such questions.

Both questions satisfy this Court's standard for state-court review. The Aquarium's first question asks this Court to decide "whether a large-scale industry can avail itself of [the circumstances-of-publication exception]," an issue "Maine courts have not addressed." Mot. Certify 2. That question turns on whether Maine bars defamation suits by large groups per se or follows the Restatement (Second) of Torts § 564A, under which "circumstances of publication" may "give rise to the conclusion that there is particular reference to the member" even if the defamed group is not small. *See also Hudson v. Guy Gannett Broad. Co.*,

521 A.2d 714, 717 (Me. 1987) (holding that a statement "concerns" the plaintiff if "its recipient correctly, or mistakenly but reasonably" understood it was meant to refer to the plaintiff (citation omitted)); *Robinson v. Guy Gannett Publ'g Co.*, 297 F. Supp. 722, 726 (D. Me. 1969) (explaining that when a statement does not clearly refer to the plaintiff, "he must show that it was actually understood as referring to him"). Only the Supreme Judicial Court of Maine should decide whether the Restatement provision reflects the state's common law.

Second, the Aquarium has urged this Court to determine whether statements involving scientific matters are protected as a matter of law. Pet. Permission 19–25. All parties agree that the Maine courts have not addressed this issue. Mot. Certify 2; Opp. 21. Courts that have done so typically determine whether statements involving scientific matters are opinions based on a multitude of circumstances. *E.g.*, *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 497–98 (2d Cir. 2013) (New York law); *Pacira BioSciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240, 248–49 (3d Cir. 2023) (New Jersey law); *Torrey v. Infectious Diseases Soc'y of Am.*, 86 F.4th 701, 704 (5th Cir. 2023) (Texas, New York, Virginia law); *see also Conformis, Inc. v.*

*Aetna, Inc.*, 58 F.4th 517, 534 (1st Cir. 2023) (Massachusetts law) (reasoning that the court "must take into account the statement's context, including the medium in which the statement was published and the audience to which it was presented"). The Maine courts have not adopted this rule, much less determined the types of circumstances under which it might apply.

Third, by the Aquarium's telling, these issues involve policy judgments that warrant certification. *See, e.g.*, Mot. Certify 2. And this case has enormous economic implications for the State of Maine. *See Brown v. Crown Equip. Corp.*, 501 F.3d 75, 78 (1st Cir. 2007) (certifying question "affecting the safety of the citizens of Maine, the costs they pay, and the investments of businesses operating in Maine"); *see also, e.g.*, *Doe v. McKesson*, 2 F.4th 502, 503 (5th Cir. 2021) (certifying question requiring "politically fraught balancing of 'various moral, social, and economic factors'" (quoting *McKesson*, 592 U.S. at 5)); *Frlekin v. Apple, Inc.*, 870 F.3d 867, 873 (9th Cir. 2017) (certifying question with "significant legal, economic, and practical consequences for employers and employees throughout the state of California"). Plaintiffs are significant contributors to the state's economy, and the

Aquarium's statements have had serious consequences for their businesses. The Supreme Judicial Court of Maine should be given the opportunity to decide whether such statements are actionable under the state's common law of defamation.

Finally, both questions also satisfy Maine's standard for accepting certified questions from federal courts. The Supreme Judicial Court will hear a legal issue when "(1) there is no dispute as to the material facts at issue; (2) there is no clear controlling precedent; and (3) [the] answer, in at least one alternative, would be determinative of the case." *Franchini v. Investor's Bus. Daily, Inc.*, 268 A.3d 863, 865–66 (Me. 2022) (cleaned up). It is "a strong policy" of the high court to answer questions that meet those criteria. *Dinan v. Alpha Networks Inc.*, 60 A.3d 792, 796 (Me. 2013) (cleaned up) (noting that certification is "conducive to a sound federalism and the promotion of harmonious relations between federal and State Courts"); *accord Lehman Bros v. Schein*, 416 U.S. 386, 391 (1974) (stating that certification procedures "help[] build a cooperative judicial federalism" by letting state courts decide important principles of state law).

Both questions are outcome-determinative issues of law that have not been decided by the Maine courts. In its successful application for review, the Aquarium explained that the issues on appeal are "novel," that they are "dispositive," and that a ruling in its favor "would end this case." Mot. Certify 5, 8–9; *see also* Pet. Permission 4, 8, 12, 22. And the Aquarium already persuaded this Court that both questions turn on whether Maine would recognize certain principles of defamation law— not on disputed facts. *See* Pet. Permission 12, 20 ("The issue presents an important, 'controlling question of law.'"); Mot. Certify 5 ("This question implicates a pure legal principle."); *see also* Judgment, *Monterey Bay Aquarium Found. v. Bean Maine Lobster, Inc., et al.*, No. 25-8012 (1st Cir. Aug. 12, 2025) (granting petition for interlocutory appeal). Because all three predicates for state-court certification are met, Maine's Supreme Judicial Court would likely accept these issues for review if given the opportunity.

Maine's "strong policy" for its high court to answer dispositive state-law questions arising in federal cases further counsels in favor of certification. *Dinan*, 60 A.3d at 796. As the Supreme Judicial Court has expressed, "[w]herever reasonably possible, the state court of last resort

should be given opportunity to decide state law issues on which there are no state precedents which are controlling." *Kneizys*, 290 A.3d at 554 (quoting *Scamman v. Shaw's Supermarkets, Inc.*, 157 A.3d 223, 228 (Me. 2017)); *Bankr. Estate of Everest v. Bank of Am., N.A.*, 111 A.3d 655, 659 (Me. 2015); *Dinan*, 60 A.3d at 796; *White v. Edgar*, 320 A.2d 668, 675 (Me. 1974). In the high court's view, this policy:

> (1) tends to avoid the uncertainty and inconsistency in the exposition of state law caused when federal courts render decisions of state law which have an interim effectiveness until the issues are finally settled by the state court of last resort; and (2) minimizes the potential for state-federal tensions arising from actual, or fancied, federal court efforts to influence the development of state law.

*Kneizys*, 290 A.3d at 554 (quoting *Scamman*, 157 A.3d at 228). This Court should honor that policy by allowing Maine's high court to chart the course for the state's common law of defamation.

## CONCLUSION

Pursuant to Me. R. App. P. 25 and 4 M.R.S. § 57, this Court should certify the following questions to the Supreme Judicial Court of Maine:

1. Whether, as a matter of law, statements about a large group may "concern" a defamation plaintiff if the "circumstances of publication" indicate that those

statements refer to the plaintiff? *See* Restatement (Second) of Torts § 564A.

2. Whether, and under what circumstances, statements about matters of science are protected from defamation liability as a matter of Maine law?

This Court should also stay any briefing schedule in the case until this

motion has been decided.

Dated:  September 22, 2025

By: */s/ Megan Barbero*

VENABLE LLP

Megan Barbero (Bar No. 1136991)
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4540
mbarbero@venable.com

Edward P. Boyle (Bar No. 51191)
151 West 42nd Street, 49th Floor
New York, NY 10036
(212) 808-5675
epboyle@venable.com

Kevin J. Lipson (Bar No. 1215936)
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4415
kjlipson@venable.com

Kyle H. Keraga (Bar No. 1214412)
750 East Pratt Street, Suite 900

Baltimore, MD 21202
(410) 244-7650
khkeraga@venable.com

RUPRECHT & BISCHOFF LLP

Clifford Ruprecht (Bar No. 74826)
75 Market Street, Suite 303
Portland, ME 04101
(207) 618-5400
cruprecht@rb-lawyers.com

*Attorneys for Appellees Bean Maine
Lobster, Inc.; Maine Lobstermen's
Association, Inc.; Maine Coast
Fishermen's Association, Inc.; Maine
Lobster and Processing, LLC d/b/a/
Atwood Lobster, LLC; and Bug
Catcher, Inc.*

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this brief complies with the type-volume limits imposed by Fed. R. App. P. 27(d)(2)(A) because it contains 2900 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). Additionally, this brief complies with the typeface requirements under Fed. R. App. P. 32(a)(5), and the type-style requirement under Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: September 22, 2025        /s/ *Megan Barbero*
                                            Megan Barbero (Bar No. 1136991)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of September 2025, I caused the foregoing brief to be electronically filed using the Court's CM/ECF system. I further certify that all participants in this case are registered CM/ECF users, and that service on all parties will be accomplished through the CM/ECF system.

Dated: September 22, 2025

/s/ Megan Barbero
Megan Barbero (Bar No. 1136991)
