**Nos. 25-1206, 25-1772**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

───────────────────────────

BEAN MAINE LOBSTER, INC.; MAINE LOBSTERMEN'S ASSOCIATION; MAINE COAST FISHERMEN'S ASSOCIATION, INC.; MAINE LOBSTER AND PROCESSING, LLC, d/b/a Atwood Lobster, LLC; BUG CATCHER, INC.,
*Plaintiffs-Appellees,*

v.

MONTEREY BAY AQUARIUM FOUNDATION,
*Defendant-Appellant.*

───────────────────────────

On appeal from the United States District Court for the District of Maine, Case No. 2:23-cv-00129-JAW (Hon. John A. Woodcock, Jr.)

───────────────────────────

**BRIEF OF THE INSTITUTE FOR FREE SPEECH, AUTHORS GUILD, CENTER FOR BIOLOGICAL DIVERSITY, DEFENDERS OF WILDLIFE, FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, FREEDOM OF THE PRESS FOUNDATION, MANHATTAN INSTITUTE, AND PUBLIC CITIZEN AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT AND REVERSAL**

───────────────────────────

LYNN OBERLANDER
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, New York 10019
Telephone: (212) 223-0200
oberlanderl@ballardspahr.com

TAYLOR WASHBURN
BALLARD SPAHR LLP
1301 Second Avenue, Suite 2800
Seattle, Washington 98101
Telephone: (206) 223-7000
washburnt@ballardspahr.com

FACUNDO BOUZAT
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-8500
bouzatf@ballardspahr.com

February 26, 2026

*Counsel for* Amici Curiae

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 29(a)(4)(A), counsel for *amici curiae* certify that (1) *amici* do not have any parent corporations; and (2) no publicly-held corporations hold 10 percent or more of the stock or of any ownership interest in *amici*.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................iii

INTERESTS OF *AMICI CURIAE* ........................................................ 1

SUMMARY OF ARGUMENT ................................................... 7

ARGUMENT ...................................................................... 9

I.    GROUP-DEFAMATION ACTIONS ENDANGER FREE
      EXPRESSION ............................................................. 9

      A.    A defamation claim must be based on statements
            "of and concerning" the plaintiff in particular ................... 10

      B.    Authorizing group-defamation actions would chill
            speech on matters of public concern ................................ 14

II.   THE COURTS HAVE REJECTED GROUP-
      DEFAMATION CLAIMS ............................................... 21

III.  THIS COURT SHOULD REVERSE THE DISTRICT
      COURT .................................................................... 26

      A.    MBAF addressed a matter of public concern ...................... 27

      B.    The circumstances-of-publication exception to the
            group-defamation rule does not apply ............................... 29

CONCLUSION ................................................................. 35

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Abramson v. Pataki,*
    278 F.3d 93 (2d Cir. 2002) ............................................................... 18

*Adams v. WFTV,*
    691 So. 2d 557 (Fla. 5th Dist. Ct. App. 1997) ............................. 17, 25

*Ajay Nutrition Foods v. FDA,*
    378 F. Supp. 210 (D.N.J. 1974) .............................................. 17, 24, 31

*Allen v. Scribner,*
    812 F.2d 426 (9th Cir. 1987) ............................................................. 29

*Alvord-Polk v. F. Schumacher & Co.,*
    37 F.3d 996 (3d Cir. 1994) ......................................................... 17, 24

*Anyanwu v. CBS,*
    887 F. Supp. 690 (S.D.N.Y. 1995) ..................................................... 17

*Arcand v. Evening Call Publ'g,*
    567 F.2d 1163 (1st Cir. 1977) ..................................................... 23, 34

*Art of Living Found. v. Does,*
    2011 WL 2441898 (N.D. Cal. June 15, 2011) .................................... 13

*Auvil v. CBS 60 Minutes,*
    836 F. Supp. 740 (E.D. Wash. 1993) ........................................... 28, 33

*Ayyadurai v. Walsh,*
    2021 WL 3374915 (D. Mass. Aug. 3, 2021) ....................................... 16

*Barger v. Playboy Enters.,*
    564 F. Supp. 1151 (N.D. Cal. 1983) .................................................. 18

*Beauharnais v. Illinois,*
    343 U.S. 250 (1952) ........................................................................... 25

*Blatty v. N.Y. Times,*
    42 Cal.3d 1033, 728 P.2d 1177 (1986) .............................................. 13

*Bond v. Floyd,*
    385 U.S. 116 (1966) ........................................................................... 26

iii

*Brewer v. Hearst Publ'g,*
185 F.2d 846 (7th Cir. 1950) ............................................................ 16

*Chapman v. Romney,*
6 Mich. App. 36, 148 N.W.2d 230 (1967) .......................................... 16

*Church of Scientology Int'l v. Time Warner,*
806 F. Supp. 1157 (S.D.N.Y. 1992) ...................................... 10, 11, 16

*City of San Diego v. Roe,*
543 U.S. 77 (2004) ............................................................................ 14

*Conformis v. Aetna,*
58 F.4th 517 (1st Cir. 2023) .................................................. 22, 23, 33

*Connick v. Myers,*
461 U.S. 138 (1983) ............................................................... 14, 15, 27

*Diaz v. NBC Universal,*
337 F. App'x 94 (2d Cir. 2009) .......................................................... 18

*Dontigney v. Paramount Pictures,*
411 F. Supp. 2d 89 (D. Conn. 2006) .................................................. 17

*Dun & Bradstreet v. Greenmoss Builders,*
472 U.S. 749 (1985) ........................................................................... 15

*Dunn v. Millirons,*
176 F. Supp. 3d 591 (W.D. Va. 2016) ............................................... 27

*Emerito Estrada Rivera-Isuzu de P.R. v. Consumers Union of U.S.,*
233 F.3d 24 (1st Cir. 2000) ................................................... 11, 13, 14

*Fowler v. Curtis Publ'g,*
182 F.2d 377 (D.C. Cir. 1950) ........................................................... 17

*Garrard v. Charleston Cnty. Sch. Dist.,*
429 S.C. 170, 838 S.E.2d 698 (S.C. Ct. App. 2019) .......................... 18

*Garrison v. Louisiana,*
379 U.S. 64 (1964) ....................................................................... 15, 27

*Giguere v. Ridlon,*
1995 WL 463687 (D. Me. July 27, 1995) ........................................... 16

iv

*Golden N. Airways v. Tanana Publ'g*,
  218 F.2d 612 (9th Cir. 1954)...........................................................17

*Hi-Tech Pharm. v. Cohen*,
  277 F. Supp.3d 236 (D. Mass. 2016)............................................ 14, 29

*Hudson v. Guy Gannett Broad.*,
  521 A.2d 714 (Me. 1987) ............................................................ 14, 22

*Judkins v. Buckland*,
  149 Me. 59, 98 A.2d 538 (1953) .........................................................11

*Kentucky Fried Chicken of Bowling Green v. Sanders*,
  563 S.W.2d 8 (Ky. 1978) ................................................................17

*Kirch v. Liberty Media*,
  449 F.3d 388 (2d Cir. 2006) ........................................................ 32, 33

*Konigsberg v. Time, Inc.*,
  312 F. Supp. 848 (S.D.N.Y. 1970)......................................................28

*Levinsky's v. Wal-Mart Stores*,
  127 F.3d 122 (1st Cir. 1997) ....................................................... 14, 15

*Loeb v. Globe Newspaper*,
  489 F. Supp. 481 (D. Mass. 1980)......................................................18

*Loftus v. Nazari*,
  21 F. Supp. 3d 849 (E.D. Ky. 2014) ..................................................17

*MacAulay v. Bryan*,
  75 Nev. 278, 339 P.2d 377 (1959) .....................................................16

*Matal v. Tam*,
  582 U.S. 218 (2017).........................................................................16

*McCullough v Cities Serv.*,
  676 P.2d 833 (Okla. 1984)................................................................17

*Mich. United Conservation Clubs v. CBS*,
  665 F.2d 110 (6th Cir. 1981)....................................................... 18, 34

*Mick v. Am. Dental Ass'n*,
  49 N.J. Super. 262, 139 A.2d 570 (App. Div. 1958)...........................16

*Mikolinski v. Burt Reynolds Prod.*,
10 Mass. App. Ct. 895, 409 N.E.2d 1324 (1980)...............................17

*Music Grp. Macao Com. Offshore v. Does*,
82 F. Supp. 3d 979 (N.D. Cal. 2015).................................................13

*N.Y. Times v. Sullivan*,
376 U.S. 254 (1964)........................................................... *passim*

*NAACP v. Claiborne Hardware*,
458 U.S. 886 (1982)......................................................................32

*Nat'l Nutritional Foods Ass'n v. Whelan*,
492 F. Supp. 374 (S.D.N.Y. 1980)........................................ 17, 24, 28

*Neiman-Marcus v. Lait*,
13 F.R.D. 311 (S.D.N.Y. 1952) ..................................................... 18, 31

*Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. #204*,
523 F.3d 668 (7th Cir. 2008)...........................................................26

*O'Brien v. Williamson Daily News*,
735 F. Supp. 218 (E.D. Ky. 1990) ..................................................18

*Ouderkirk v. People for the Ethical Treatment of Animals*,
2007 WL 1035093 (E.D. Mich. Mar. 29, 2007) ............................27, 28

*Pan Am Sys. v. Atl. Ne. Rails & Ports*,
804 F.3d 59 (1st Cir. 2015) .............................................................9

*Provisional Gov't of the Republic of New Afrika v. ABC*,
609 F. Supp. 104 (D.D.C. 1985) ......................................................16

*QSP v. Aetna Cas. & Sur.*,
265 Conn. 343, 773 A.2d 906 (2001).................................................13

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992).......................................................................16

*Rambaldi v. Mt. Vernon*,
2003 WL 23744272 (S.D.N.Y. Mar. 31, 2003) ............................28, 29

*Reed v. Chamblee*,
2023 WL 6292578 (M.D. Fla. Sept. 27, 2023) ..................................18

*Riss & Co. v. Ass'n of Am. R.R.,*
   187 F. Supp. 323 (D.D.C. 1960) ........................................................ 17

*Robinson v. Guy Gannett Publ'g,*
   297 F. Supp. 722 (D. Me. 1969) .............................................. 11, 17, 21

*Rosenblatt v. Baer,*
   383 U.S. 75 (1966) .............................................................. 12, 13

*Ryckman v. Delavan,*
   25 Wend. 186 (N.Y. Ct. for Corr. of Err. 1840) ................................. 19

*Schuster v. U.S. News & World Rep.,*
   602 F.2d 850 (8th Cir. 1979) .............................................. 17, 24, 25

*Schutzman & Schutzman v. News Syndicate,*
   304 N.Y.S.2d 167 (1969) .................................................... 17

*Serv. Parking v. Washington Times,*
   92 F.2d 502 (D.C. Cir. 1937) .............................................. 18

*Sims v. Kiro, Inc.,*
   20 Wash. App. 229, 580 P.2d 642 (1978) .................................... 17

*Snyder v. Phelps,*
   562 U.S. 443 (2011) ..................................................... *passim*

*Steaks Unlimited v. Deaner,*
   623 F.2d 264 (3d Cir. 1980) .............................................. 28

*Steam Press Holdings v. Hawaii Teamsters & Allied Workers Union,*
   302 F.3d 998 (9th Cir. 2002) ............................................. 13

*Sullivan v. Chester Water Auth.,*
   2022 WL 2901068 (D. Me. July 22, 2022) ................................... 21, 22

*Sumner v. Buel,*
   12 Johns. 475 (N.Y. Sup. Ct. 1815) ...................................... 11, 12

*Talal v. Fanning,*
   506 F. Supp. 186 (N.D. Cal. 1980) ....................................... 16

*Texas Beef Grp. v. Winfrey,*
   11 F. Supp. 2d 858 (N.D. Tex. 1998) .................................. 17, 24, 28

*Texas v. Johnson*,
   491 U.S. 397 (1989) .................................................................. 15

*Vill. of False Pass v. Watt*,
   565 F. Supp. 1123 (D. Alaska 1983) .................................................. 28

*Viola v. A & E Television Networks*,
   433 F. Supp. 2d 613 (W.D. Pa. 2006) ................................................. 16

*Weatherhead v. Globe Int'l*,
   832 F.2d 1226 (10th Cir. 1987) ................................................. 17, 24

## Other Authorities

U.S. Const. amend. I ..................................................................... *passim*

Geoffrey Stone, *Group Defamation,* 15 OCCASIONAL PAPERS
   L. SCH. U. CHI. 1 (1978) ..................................................................... 19

Jeremy Waldron, *Dignity and Defamation: The Visibility of
   Hate*, 123 HARV. L. REV. 1596 (May 2010) .......................................... 15

Joseph Tanenhaus, *Group Libel*, 35 CORNELL L. REV. 261 (1950) ......... 12

Nat Stern, *The Certainty Principle as Justification for the
   Group Defamation Rule*, 40 ARIZ. STATE L.J. 951 (2008) .................... 20

Restatement (Second) of Torts § 564A (1977) ...................... 11, 22, 29, 31

1 Robert D. Sack, *Sack on Defamation* (5th ed. 2017) ............................ 13

1 Rodney A. Smolla, *Law of Defamation* (2d ed. 2025) .................... 12, 13

Samantha Barbas, *The Rise and Fall of Group Libel: The Forgotten
   Campaign for Hate Speech Laws*, 54 LOY. U. CHI. L.J. 297 (2022) ... 26

## INTERESTS OF *AMICI CURIAE*[1]

1.    ***The Institute for Free Speech*** is a nonpartisan, nonprofit organization dedicated to the protection of the First Amendment rights of speech, assembly, petition, and the press. Along with scholarly and educational work, IFS represents individuals and civil society groups in litigation securing their First Amendment liberties. IFS opposes lawsuits that chill free speech and seek to punish people who engage in discussion and debate on issues of public concern.

2.    ***The Authors Guild***, founded in 1912, is a national nonprofit association of over 17,000barbas professional, published writers of all genres including periodicals and other composite works. The Guild works to promote the rights and professional interests of authors in various areas, including copyright, freedom of expression, and fair pay. Many Guild members earn their livelihoods through their writing. Their work covers important issues in history, biography, science, politics, medicine,

---

[1] No counsel for a party authored this brief, in whole or in part. Further, no person other than *amici,* their counsel, and their members contributed money intended to fund preparing or submitting this brief. All parties consented to the filing of this brief. *See* Fed. R. App. P. 29(a)(2), (a)(4)(E).

1

business, and other areas; they are frequent contributors to the most influential and well-respected publications in every field.

3. ***The Center for Biological Diversity*** is a national nonprofit conservation organization with more than 1.8 million members and online activists dedicated to the protection of endangered species and wild places. The Center believes the welfare of human beings is deeply linked to nature and has worked for years to ensure the preservation, protection and restoration of biodiversity, native ecosystems, public lands and water, our climate, and public health through creative media, science, policy and litigation. The Center has advocated to protect North American right whales through litigation, administrative advocacy, rulemaking petitions, commentary in the media, and other speech aimed at securing increased protections for the whale under the Endangered Species Act and Marine Mammal Protection Act, including the need for additional measures to prevent entanglements in the lobster fishery. On this and other issues, including the harmful impacts of fossil fuels on our climate, the Center's mission depends on its ability to speak freely about the environmental and health impacts of industrial activities.

2

4.    ***Defenders of Wildlife***, founded in 1947, is a U.S.-based national conservation organization dedicated to the protection and restoration of imperiled species and their habitats in North America. On behalf of its more than two million members and supporters, Defenders seeks to conserve the full range of vulnerable North American biodiversity, from plants to pollinators to predators. To fulfill this mission, Defenders advocates before Congress and federal and state agencies, litigates in federal court, engages with the media, and educates the public through a variety of channels. For two decades, Defenders has sought to protect the critically endangered North Atlantic right whale from fishing gear entanglements and vessel strikes via rulemaking petitions, congressional outreach, legal advocacy and litigation, and public education. Defenders relies on its ability to engage in protected speech in multiple public venues to advance its organizational mission of protecting the right whale and other species across the country.

5.    ***The Foundation for Individual Rights and Expression*** is a nonpartisan nonprofit organization that defends the rights of all Americans to free speech and free thought—the essential qualities of

3

liberty. Since 1999, FIRE has successfully defended these rights through public advocacy, strategic litigation, and participation as *amicus curiae* in cases that implicate First Amendment freedoms.

To that end, FIRE has a keen interest in ensuring individuals and entities do not abuse the courts through lawsuits intended to silence speech on matters of public concern. FIRE often defends such public commentary, including in matters involving strategic lawsuits against public participation, *i.e.*, "SLAPP" cases, *e.g.*, *Trump v. Selzer*, No. 4:24-cv-00449-RGE-WPK (S.D. Iowa); *Mastriano v. Gregory*, No. 5:24-cv-00567-J (W.D. Okla.), *U.S. News & World Report, L.P. v. Chiu*, No. 24-2928 (9th Cir.), ECF No. 16.1 (Br. of *Amicus Curiae*); *Salaam v. Trump*, 2:24-cv-05560-WB (E.D. Pa.). FIRE thus strongly advocates against attempts to misuse and/or expand defamation law to threaten important protections for expressive freedoms.

6.   ***Freedom of the Press Foundation*** is a nonprofit organization that protects, defends, and empowers public-interest journalism. FPF works to preserve and strengthen First Amendment rights guaranteed to the press through a variety of avenues, including the development of

4

technological tools, documentation of attacks on the press, training newsrooms on digital security practices, and advocating for the public's right to know. FPF believes that expansions of defamation liability have a chilling effect on journalism and that allowance of group defamation claims would encourage meritless litigation by those seeking to punish constitutionally protected reporting.

7.    ***The Manhattan Institute for Policy Research*** is a nonpartisan public policy research foundation whose mission is to develop and disseminate ideas that foster greater economic choice and individual responsibility. To that end, it has historically sponsored scholarship and filed briefs protecting the rule of law and constitutionally limited government. This case interests MI because unfettered group defamation claims undermine the vital protections of the First Amendment.

8.    ***Public Citizen*** is a nonprofit consumer-advocacy organization with members in all 50 states. Public Citizen appears on behalf of its members before Congress, administrative agencies, and the courts on a wide range of issues involving protection of consumers and workers, public health and safety, and maintaining openness and integrity in

government. Public Citizen issues reports and press statements criticizing various industry and political groups and calling for consumer action to vindicate the public interest, and it encourages its members and supporters to express their own views. Because the rule against group defamation protects speech about matters of public concern, Public Citizen is concerned that the decision below threatens to chill the free expression of ideas about those matters.

## SUMMARY OF ARGUMENT

Defamation lawsuits based on statements about large groups run counter to the core principles of free expression embodied in the First Amendment. Authorizing such group-defamation actions would greatly expand the range of speech that is subject to civil liability and threaten citizens' ability to speak out on issues of public concern. If allowed, such actions would require courts to assess the accuracy and impact of general statements about entire industries, professions, political movements, religious and cultural groups, and even national or ethnic communities. Defamation law would then encompass a vast universe of constitutionally protected speech, eroding the protections of the First Amendment.

For this reason, among others, courts have long rejected group-defamation claims, holding that a statement is actionable only if it is "of and concerning" a specific plaintiff. This rule prevents a plaintiff from attacking speech that does not directly impugn the plaintiff in particular, including speech addressed to matters of public concern.

Here, trade associations representing over 5,600 Maine lobstermen sued the Monterey Bay Aquarium Foundation (MBAF), alleging MBAF

7

made defamatory statements about the impact of the lobster industry on North Atlantic right whales. Plaintiffs do not allege MBAF said anything about particular companies or individuals; rather, all the statements at issue address the lobster industry *as a whole*. The district court denied MBAF's motion to dismiss, holding that its general statements implied "each and every Maine lobsterman" endangers the right whale.

The district court acknowledged the general nature of MBAF's statements, but held that the "circumstances of publication" reasonably suggested it was referring to each of thousands of lobstermen. While it is true that the circumstances of publication can, in some cases, transform a statement that is general on its face into one that references a specific plaintiff, the district court did not identify any such circumstances here. Instead, it held MBAF's statements applied to every lobsterman because they addressed the entire industry, adopting reasoning that would apply to *any* blanket statement about a large group.

This Court should reverse the district court and hold that the First Amendment bars an individual—whether a person, a company, or an organization—from suing for defamation based upon statements about

large groups or classes of people. Affirming the district court would set a dangerous precedent by allowing individual members of large, diffuse groups to attack political speech and other commentary about issues of public concern. The Constitution safeguards our freedom to discuss such topics without fearing we will be hauled into court. Defamation law is designed to redress concrete injuries to identified individuals; it must not become a tool to threaten public discourse and debate.

## ARGUMENT

### I.    GROUP-DEFAMATION ACTIONS ENDANGER FREE EXPRESSION

The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open." *N.Y. Times v. Sullivan,* 376 U.S. 254, 270 (1964). In *Sullivan,* the Supreme Court recognized that the First Amendment limits the courts' power to award damages for defamation when doing so interferes with "freedom of expression upon public questions." *Id.* at 269; *see also Pan Am Sys. v. Atl. Ne. Rails & Ports*, 804 F.3d 59, 65–66 (1st Cir. 2015) (noting that defamation plaintiffs must show that a statement about an issue of public concern is *materially* false).

Group-defamation actions present a particular threat to the First Amendment because they address, by definition, speech relating to large groups rather than specific individuals or entities. As a result, such cases almost invariably involve expression on matters of public concern. This case, which involves statements about the purported ecological impact of the lobster industry, is no exception.

### A. *A defamation claim must be based on statements "of and concerning" the plaintiff in particular.*

A group-defamation claim is one that concerns a statement about a large group or class of persons, asserted by one or more group members, or by membership organizations that purport to represent the interests of their members.[2] A defamation claim by a corporation or other entity, brought on its own behalf and arising from statements about that entity, is *not* a group-defamation claim; entities, like people, can recover if they are an identifiable target of defamatory speech.[3]

---

[2] Plaintiffs here fall into both categories; they include three Maine lobster companies as well as two nonprofit corporations purporting to represent the interests of thousands of lobstermen.

[3] In *Church of Scientology Int'l v. Time Warner*, 806 F. Supp. 1157, 1161 (S.D.N.Y. 1992), *aff'd sub nom. Church of Scientology Int'l v. Behar*, 238

(continued...)

10

As discussed in detail in Section II, below, U.S. courts have long been hostile to group-defamation claims. "As a general rule, no action lies for the publication of defamatory words concerning a large group or class of persons." Restatement (Second) of Torts § 564A, cmt. a. This group-defamation rule is derived from the requirement that for a statement to be defamatory, it must be made "of and concerning" the plaintiff. *See*, *e.g.*, *Robinson v. Guy Gannett Publ'g*, 297 F. Supp. 722, 725 (D. Me. 1969) (quoting *Judkins v. Buckland*, 149 Me. 59, 65, 98 A.2d 538 (1953)); *Emerito Estrada Rivera-Isuzu de P.R. v. Consumers Union of U.S.*, 233 F.3d 24, 26 (1st Cir. 2000). In other words, a plaintiff must show that the recipient of a defamatory statement "correctly, or mistakenly but reasonably, understands that it was intended to refer" to the plaintiff *in particular*. Restatement § 564. This requirement is deeply rooted in the common law. *See*, *e.g.*, *Sumner v. Buel*, 12 Johns. 475, 477 (N.Y. Sup. Ct.

---

F.3d 168 (2d Cir. 2001), the court recognized this distinction in holding that the Church of Scientology could not sue based on statements about "Scientology," but could proceed with claims based on statements about the Church as a distinct entity.

11

1815) (citing a 17th century English case in holding that "writing which inveighs . . . against a particular order of men, is no libel").[4]

The of-and-concerning requirement is not merely "a venerable common-law doctrine, but a rule of constitutional dimension." 1 Rodney A. Smolla, *Law of Defamation* § 4:40.50 (2d ed. 2025). In *Sullivan* and a subsequent case, *Rosenblatt v. Baer*, 383 U.S. 75 (1966), the Supreme Court emphasized that this requirement ensures defamation lawsuits do not become a weapon to suppress speech on matters of public concern. In *Sullivan*, the Court held that statements criticizing the activities of the "police" were "constitutionally insufficient" to support a claim by an individual police commissioner. 376 U.S. at 288–92.[5] In *Rosenblatt*, the

---

[4] One scholar, writing in 1950, catalogued numerous cases from the 19th and early 20th centuries rejecting individual claims based on statements about large classes, including "wine-joint" owners, insurance agents, and antiques dealers. Joseph Tanenhaus, *Group Libel*, 35 CORNELL L. REV. 261, 263–64 & nn.9–16 (1950); *see also id.* at 266 (concluding that, as of the time of publication, "there has not been a single case holding a person civilly responsible for the defamation of a large collectivity").

[5] *Sullivan* placed particular emphasis on the harm that would result from allowing individual public officials to bring defamation claims based on criticism of government. 376 U.S. at 291–92 (noting that to allow a police commissioner to sue based on criticism of the police would "transmut[e]

(continued...)

Court cited *Sullivan* and applied the of-and-concerning requirement in holding that the plaintiff, who had served on a county commission, could not recover based on statements that impugned the commission but did not reference plaintiff himself. 383 U.S. at 79–83.

Scholars and lower courts have correctly interpreted these opinions as giving the of-and-concerning requirement constitutional status. *See, e.g.*, 1 Smolla, *Law of Defamation* § 4:40.50; 1 Robert D. Sack, *Sack on Defamation* § 2:9.1 (5th ed. 2017); *Steam Press Holdings v. Hawaii Teamsters & Allied Workers Union*, 302 F.3d 998, 1004 (9th Cir. 2002) (the First Amendment "requires that the challenged statement be 'of and concerning' the complainant"); *see also Music Grp. Macao Com. Offshore v. Does,* 82 F. Supp. 3d 979, 985 (N.D. Cal. 2015); *Art of Living Found. v. Does*, 2011 WL 2441898, at *6 (N.D. Cal. June 15, 2011); *QSP v. Aetna Cas. & Sur.*, 256 Conn. 343, 356 n.14, 773 A.2d 906 (2001); *Blatty v. N.Y. Times*, 42 Cal.3d 1033, 1042, 728 P.2d 1177 (1986); *cf. Emerito Estrada*, 233 F.3d at 26–29 (recognizing "constitutional concerns" are present in

---

criticism of government, however impersonal it may seem on its face, into personal criticism, and hence potential libel").

that involve "generalized criticism" about public issues); *Hudson v. Guy Gannett Broad.,* 521 A.2d 714, 716 n.5 (Me. 1987) ("[a]t least in public figure defamation cases," the First Amendment "requires that a publication, to be actionable, must be 'of and concerning' the plaintiff").

### B. *Authorizing group-defamation actions would chill speech on matters of public concern.*

Authorizing defamation claims based on general statements about large groups would chill free expression because such statements almost always relate to matters of public concern. Speech is said to address a matter of public interest when it concerns "any matter of political, social, or other concern to the community," *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)), or "a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public," *id.* (quoting *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004)). Whether a statement is related to a public issue depends in part on its "form and context," *Connick*, 461 U.S. at 147–48, including "a speaker's subjective intent to create a public discourse," *Hi-Tech Pharm. v. Cohen*, 277 F. Supp.3d 236, 247 (D. Mass. 2016). There is no requirement that a matter of public concern be one of "paramount

14

importance or national scope." *Levinsky's v. Wal-Mart Stores*, 127 F.3d 122, 132 (1st Cir. 1997).

"Speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder*, 562 U.S. at 452 (quoting *Connick*, 461 U.S. at 145); *see also Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 758–59 (1985) (speech on "matters of public concern" is "at the heart of the First Amendment's protection"). This is because "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964). Such speech is constitutionally protected even when many would deem it outrageous or vulgar. *Snyder*, 562 U.S. at 454; *see also Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("[i]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable").[6]

---

[6] Some academics have argued for group-defamation laws as a means of combatting so-called hate speech. *See, e.g.*, Jeremy Waldron, *Dignity and Defamation: The Visibility of Hate*, 123 HARV. L. REV. 1596 (May 2010). The Supreme Court has repeatedly made clear that any such laws would

(continued...)

A review of cases in which courts have rejected group-defamation claims illustrates that such actions generally challenge protected speech. Plaintiffs have, for example, attempted to sue based on statements about political movements and organizations,[7] religions and churches,[8] ethnic

---

be unconstitutional. *Snyder*, 562 U.S. at 454; *Matal v. Tam*, 582 U.S. 218, 246 (2017); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391–93 (1992).

[7] *Ayyadurai v. Walsh*, 2021 WL 3374915, at *9–12 (D. Mass. Aug. 3, 2021) (participants in a political rally); *Giguere v. Ridlon*, 1995 WL 463687, at *3 & n.3 (D. Me. July 27, 1995) (supporters of a losing sheriff candidate), *aff'd*, 98 F. 3d 659 (1st Cir. 1996); *Provisional Gov't of the Republic of New Afrika v. ABC*, 609 F. Supp. 104, 108 (D.D.C. 1985) (a Black nationalist group); *Chapman v. Romney*, 6 Mich. App. 36, 40, 148 N.W.2d 230 (1967) (the John Birch Society); *MacAulay v. Bryan*, 75 Nev. 278, 280–82, 339 P.2d 377 (1959) (group advocating a particular highway route); *Mick v. Am. Dental Ass'n*, 49 N.J. Super. 262, 284–87, 139 A.2d 570 (App. Div. 1958) (opponents of fluoridation); *Brewer v. Hearst Publ'g*, 185 F.2d 846, 848–49 (7th Cir. 1950) (supporters of vivisection).

[8] *Viola v. A & E Television Networks*, 433 F. Supp. 2d 613, 616–17 (W.D. Pa. 2006) (the Roman Catholic Church); *Church of Scientology Int'l*, 806 F. Supp. at 1160–61 (Scientology); *Talal v. Fanning*, 506 F. Supp. 186, 187 (N.D. Cal. 1980) (Islam).

16

and national communities,[9] professions,[10] industries,[11] shared-interest groups,[12] sports teams and leagues,[13] and large collections of

---

[9] *Dontigney v. Paramount Pictures*, 411 F. Supp. 2d 89, 92–93 (D. Conn. 2006) (Native Americans); *Anyanwu v. CBS*, 887 F. Supp. 690, 692–93 (S.D.N.Y. 1995) (Nigerians in international business); *Mikolinski v. Burt Reynolds Prod.*, 10 Mass. App. Ct. 895, 409 N.E.2d 1324 (1980) (people of Polish ancestry).

[10] *Loftus v. Nazari*, 21 F. Supp. 3d 849, 854 (E.D. Ky. 2014) (the medical profession); *McCullough v Cities Serv.*, 676 P.2d 833, 835–37 (Okla. 1984) (osteopaths); *Schutzman & Schutzman v. News Syndicate*, 304 N.Y.S.2d 167, 169–71 (1969) ("the entire legal profession").

[11] *Texas Beef Grp. v. Winfrey*, 11 F. Supp. 2d 858, 864 (N.D. Tex. 1998) (the cattle industry), *aff'd*, 201 F.3d 680 (5th Cir. 2000); *Adams v. WFTV*, 691 So. 2d 557 (Fla. 5th Dist. Ct. App. 1997) (*per curiam*) (commercial net fishermen); *Alvord-Polk v. F. Schumacher & Co.*, 37 F.3d 996, 1015–16 (3d Cir. 1994) (800-number wallpaper dealers); *Weatherhead v. Globe Int'l,* 832 F.2d 1226, 1228–29 (10th Cir. 1987) (dog breeders); *Nat'l Nutritional Foods Ass'n v. Whelan*, 492 F. Supp. 374, 380–81 (S.D.N.Y. 1980) (health food purveyors); *Schuster v. U.S. News & World Rep.*, 602 F.2d 850, 854 (8th Cir. 1979) (distributors and advocates of vitamin B-17); *Sims v. Kiro, Inc.*, 20 Wash. App. 229, 234–36, 580 P.2d 642 (1978) (sellers of bicentennial memorabilia); *Kentucky Fried Chicken of Bowling Green v. Sanders*, 563 S.W.2d 8, 9 (Ky. 1978) (*per curiam*) (every KFC franchise); *Ajay Nutrition Foods v. FDA*, 378 F. Supp. 210, 218–19 (D.N.J. 1974) (health food), *aff'd*, 513 F.2d 625 (3d Cir. 1975); *Robinson*, 297 F. Supp. at 725–26 (distributors of products for the deaf); *Riss & Co. v. Ass'n of Am. R.R.*, 187 F. Supp. 323, 326 (D.D.C. 1960) (railroad companies); *Golden N. Airways v. Tanana Publ'g*, 218 F.2d 612, 619–20 (9th Cir. 1954) ("all non-scheduled air carriers operating in Alaska"); *Fowler v. Curtis Publ'g*, 182 F.2d 377, 378 (D.C. Cir. 1950) (D.C. taxi

(continued...)

17

employees.[14] These are all topics about which people must able to express themselves freely and without fear of liability—even when they do so using speech that is "vehement, caustic, and sometimes unpleasantly sharp." *Sullivan*, 376 U.S. at 270. It is difficult to improve on this observation made by a New York court nearly two centuries ago:

> It is far better for the public welfare that some occasional consequential injury to an individual, arising from general censure of his profession, his party, or his sect, should go

---

drivers); *Serv. Parking v. Washington Times*, 92 F.2d 502, 505–06 (D.C. Cir. 1937) (D.C. parking lot operators).

[12] *Barger v. Playboy Enters.*, 564 F. Supp. 1151, 1153–55 (N.D. Cal. 1983) (unnamed women affiliated with a motorcycle gang), *aff'd without op.*, 732 F.2d 163 (9th Cir. 1984) (unpublished); *Mich. United Conservation Clubs v. CBS*, 665 F.2d 110, 112 (6th Cir. 1981) (sports game hunters).

[13] *Reed v. Chamblee*, 2023 WL 6292578, at \*11–13 (M.D. Fla. Sept. 27, 2023) (Saudi-backed professional golf tour); *Garrard v. Charleston Cnty. Sch. Dist.*, 429 S.C. 170, 203–07, 838 S.E.2d 698 (S.C. Ct. App. 2019) (high school football team), *aff'd in pertinent part*, 439 S.C. 596, 890 S.E.2d 567 (S.C. 2023).

[14] *Diaz v. NBC Universal*, 337 F. App'x 94, 96 (2d Cir. 2009) (New York City DEA agents); *Abramson v. Pataki*, 278 F.3d 93, 102–03 (2d Cir. 2002) (Javits Center workers); *O'Brien v. Williamson Daily News*, 735 F. Supp. 218, 220–23 (E.D. Ky. 1990) (a group of 27 teachers), *aff'd without op.*, 931 F.2d 893 (6th Cir. 1991) (unpublished); *Loeb v. Globe Newspaper*, 489 F. Supp. 481, 483–84 (D. Mass. 1980) (the entire editorial staff of the *Manchester Union Leader*); *Neiman-Marcus v. Lait,* 13 F.R.D. 311, 316–17 (S.D.N.Y. 1952) (a group of 382 saleswomen).

> without remedy, than that free discussion on the great questions of politics, or morals, or faith, should be checked by the dread of embittered and boundless litigation.

*Ryckman v. Delavan,* 25 Wend. 186, 199 (N.Y. Ct. for Corr. of Err. 1840).

The danger of "embittered and boundless litigation" is heightened in the group-defamation context because such actions could, in theory, be brought by *any member of the relevant group*.[15] Thus, those who speak on topics of public concern would need to account for the risk that a general statement could expose them to liability from thousands or even millions of potential plaintiffs—even though the damage inflicted by statements about large classes is "remote, indirect, and uncertain." Geoffrey Stone, *Group Defamation,* 15 OCCASIONAL PAPERS L. SCH. U. CHI. 1, 5 (1978). Perversely, this means that debates about important public issues could yield a flood of tort litigation, threatening massive damages awards.

People reasonably interpret blanket statements differently than statements about individuals, which is one reason the harm in group-defamation lawsuits is diffuse and intangible. If a speaker claims that

---

[15] The district court's opinion here, for example, entails "each and every Maine lobsterman" has a cause of action against MBAF. Add. 110.

19

one particular attorney is a thief, a reasonable listener might conclude that he meant to say, based upon personal knowledge, that the lawyer has actually committed a theft; a false allegation of this kind could inflict concrete reputational harm and be actionable. By contrast, if a speaker says *every* lawyer is a thief, no reasonable listener would imagine that he is accusing a specific, unnamed lawyer of theft. As one scholar notes, this would be true even if the speaker subjectively believes every lawyer is a thief, and even if the recipients understand he intends to impugn every single member of the legal profession. Nat Stern, *The Certainty Principle as Justification for the Group Defamation Rule*, 40 ARIZ. STATE L.J. 951, 988 (2008). As the size of a class increases, so decreases the plausibility that a broad statement about it fairly characterizes any individual class member or constitutes a false claim about a specific person.

Every individual is a member of innumerable large groups—groups based on political and religious affiliation, sex and gender, race, ethnicity, interest and affinity, profession, employer, place of residence, and so on. To hold group members can sue based on general statements about any such class to which they belong would have disastrous consequences for

20

free expression, chilling speech by individuals and organizations of all persuasions. Moreover, allowing such actions would confer little benefit, since the defamatory impact of such speech is often diffuse and uncertain. In deciding this case, this Court must weigh heavily the consequences for the First Amendment of affirming the district court.

## II.    THE COURTS HAVE REJECTED GROUP-DEFAMATION CLAIMS

This Court and courts applying Maine law have adopted the group-defamation rule as reflected in the Restatement—namely, that no action lies for the publication of defamatory words concerning a large group. In line with the Restatement, Maine courts have held a statement about a group is not actionable with two limited exceptions: "[1] the group or class is so small that the statements may reasonably be understood to refer to each member, or [2] the circumstances are such that the material may reasonably be understood to refer to [the plaintiff] personally." *Robinson*, 297 F. Supp. at 726; *accord* Restatement § 564A; *see also Sullivan v. Chester Water Auth.*, 2022 WL 2901068, at *13 (D. Me. July 22, 2022)

21

(dismissing Maine defamation claim because disparaging remarks about "minorities" failed to show a "special application to [the plaintiff]").[16]

This Court elaborated on the second of these limited exceptions in *Conformis v. Aetna*, 58 F.4th 517 (1st Cir. 2023). In that case, a knee-implant manufacturer asserted a product-disparagement claim, a close analogue to defamation, where the defendant, an insurer, had issued a revised policy addressing the "effectiveness" of a class of medical devices offered by numerous manufacturers. *Id.* at 526–27. The Court held that, while a challenged statement in the policy did not mention the plaintiff by name, the circumstances were such that a reasonable recipient of the statement would understand it referred to plaintiff. Among these were the fact that (1) the policy's background section *did* reference plaintiff by name (and no other manufacturer); and (2) defendant stopped providing coverage for plaintiff's product at the same time it issued the statement.

---

[16] The first of these exceptions, the small-group exception, generally only applies to groups of 25 or fewer. Restatement § 564A, cmt. b. In *Hudson,* 521 A.2d at 715, for example, the court found a genuine issue of material fact as to whether a statement that 12 unnamed business employees were fired for drug-related reasons was "of and concerning" plaintiff, one of the fired employees.

22

*Id.* at 529–30. By contrast, the Court held that two other challenged statements were *not* actionable because these addressed an entire class of services and procedures, and therefore were not "of and concerning" plaintiff or its product in particular. *Id.* at 530. In other words, the Court only allowed the plaintiff to pursue a claim based on a statement that, in context, clearly distinguished it from others in the same industry.

*Conformis* relied on this Court's decision in *Arcand v. Evening Call Publ'g*, 567 F.2d 1163 (1st Cir. 1977), which likewise shows statements about groups are not actionable unless they single out identifiable group members. In *Arcand*, this Court affirmed the dismissal of a defamation claim brought by a 21-member group based on a defamatory statement about one unidentified member. *Id.* at 1164–65. The Court rejected the suggestion that "the conduct of the one [group member is] typical of all." *See id.* (noting that an "individual's membership in the group does not suggest a common determinant of character so much as simply a practical reference point"). To hold otherwise, this Court cautioned, would "chill communication to the marrow" and allow "virtually every complaint of group libel" to proceed to a jury. *Id.*

23

Other federal courts have also rejected group-defamation claims—including in cases involving general statements about industries. In *Ajay Nutrition Foods*, for example, the court held that "an entire industry, such as the health food processing industry, cannot sue on grounds of defamation" where plaintiffs premised their claim on press releases that referred to health food distributors generally as "'nutrition quacks,' 'food faddists,' [and] 'health quacks.'" 378 F. Supp. at 212, 218–19; *see also Texas Beef Grp.*, 11 F. Supp. 2d at 864 (rejecting claim based on theory that a news segment about mad cow disease defamed "the cattle feeding industry"); *Alvord-Polk*, 37 F.3d at 1015–16 (rejecting claim based on a statement characterizing 800-number wallpaper dealers as "pirates"); *Weatherhead*, 832 F.2d at 1228–29 (rejecting claim based on an article calling unidentified dog breeding farms "death camps"); *Whelan*, 492 F. Supp. at 377, 381 (dismissing claim based on statements "disparaging the health food industry," and noting that plaintiffs were "merely three of thousands of individuals engaged in the health food business"); *Schuster*, 602 F.2d at 855 (statements about "the large group of [vitamin

24

B-17] distributors and advocates" cannot "reasonably be understood as being of and concerning" individual plaintiffs).

State courts have reached similar conclusions. In a case that bears a striking resemblance to this one, a Florida appellate court affirmed the dismissal of a defamation claim brought on behalf of 637 commercial net fisherman, who alleged the defendants, television news stations, had run advertisements that unfairly characterized "net fishermen as insensitive to fish resources and endangered species," which purportedly resulted in a state constitutional amendment banning net fishing. *Adams*, 691 So. 2d at 557. The Florida court explained that it was joining numerous other jurisdictions in adopting the group-defamation rule. *Id.* at 558.[17]

Thus, the district court's opinion here stands in contrast with a long line of cases from across the country holding that statements about large groups, such as entire industries, cannot support a defamation claim.[18]

---

[17] For additional state court opinions, see notes 7, 9–11, and 13, *supra.*

[18] The courts' antipathy for group-defamation actions is evidenced by the history of *Beauharnais v. Illinois*, in which the Supreme Court upheld, on a 5–4 vote, a conviction under a law barring defamation of "a class of citizens, of any race, color, creed or religion." 343 U.S. 250, 251 (1952). *Beauharnais* was immediately subject to intense criticism and is "almost

(continued...)

25

## III.    THIS COURT SHOULD REVERSE THE DISTRICT COURT

This Court should reverse the district court and hold that MBAF's statements about the impact of the lobster industry are protected by the First Amendment. This is a classic group-defamation case: as the district court conceded, "[n]o individual lobstermen or lobster-industry entities are mentioned" in MBAF's challenged statements. Add. 104 n.21. The purported impact of the lobster industry on North Atlantic right whales is plainly a matter of public concern, and MBAF has a First Amendment right to weigh in on this subject without fear of liability.[19] Although the district court held that the "circumstances of publication" would lead a reasonable reader to interpret MBAF's statements as making "particular

---

universally regarded to have been wrongly decided"; the Supreme Court has not cited it once as controlling precedent. Samantha Barbas, *The Rise and Fall of Group Libel: The Forgotten Campaign for Hate Speech Laws*, 54 LOY. U. CHI. L.J. 297, 333–34 (2022); *see also Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. #204*, 523 F.3d 668, 672 (7th Cir. 2008) (Posner, J.) (noting, as to *Beauharnais,* that "no one thinks the First Amendment would today be interpreted to allow group defamation to be prohibited").

[19] MBAF's statements about the impact of the lobster industry enjoy First Amendment protection regardless of their accuracy. *See Bond v. Floyd,* 385 U.S. 116, 136 (1966) ("erroneous statements must be protected to give freedom of expression the breathing space it needs to survive").

reference" to "each and every Maine lobsterman," the circumstances the district court identified do not support such a reading, and its reasoning would render the group-defamation rule dead letter.

## A.    MBAF addressed a matter of public concern.

As noted above, speech is said to address a matter of public interest when it is about "any matter of political, social, or other concern to the community," or "a subject of legitimate news interest." *Snyder,* 562 U.S. at 453. Such speech is entitled to the highest level of First Amendment protection. *Id.* at 452 (citing *Sullivan,* 376 U.S. at 270; *Connick,* 461 U.S. at 145; and *Garrison,* 379 U.S. at 74–75).

MBAF's challenged statements clearly relate to an issue of public concern. As the district court itself noted, "the impact of lobster fishing on the North Atlantic right whale has been the subject of considerable scientific, political, and legal activity in recent years." Add. 11–12. Many other courts have recognized the public's interest in issues of animal conservation and welfare,[20] and the wellbeing of whales in particular is

---

[20] *E.g., Dunn v. Millirons,* 176 F. Supp. 3d 591, 603–04 (W.D. Va. 2016), *aff'd,* 675 F. App'x 314 (4th Cir. 2017); *Ouderkirk v. People for the Ethical Treatment of Animals,* 2007 WL 1035093, at *19 (E.D. Mich. Mar. 29,

(continued...)

27

a topic of intense public concern.[21] Separately, courts have also identified a public interest in issues relating to the food supply.[22]

In addition, MBAF directed its comments to the public as part of a campaign to influence public opinion and the choices of consumers—facts that support the conclusion this is protected speech on a matter of public concern. *See Snyder*, 562 U.S. at 454–55 (display of message on public land adjacent to a public street weighs in favor of finding public issue);

---

2007) (collecting cases); *Rambaldi v. Mt. Vernon*, 2003 WL 23744272, at *8 (S.D.N.Y. Mar. 31, 2003), *aff'd*, 96 F. App'x 775 (2d Cir. 2004).

[21] *See, e.g.*, John Eligon, *A Native Tribe Wants to Resume Whaling; Whale Defenders are Divided*, N.Y. Times (Nov. 14, 2019) (describing public debate about a resumption of tribal whaling); Michael Cieply, *SeaWorld's Unusual Retort to a Critical Documentary*, N.Y. Times (July 18, 2013) (describing public debate around a documentary on captive orcas); Mark McDonald, *In Battle Against Whaling, Groups Split on Strategy*, N.Y. Times (Nov. 22, 2008) (describing public debate about the best methods to combat Japanese whaling); *see also Vill. of False Pass v. Watt*, 565 F. Supp. 1123, 1165 (D. Alaska 1983) (describing health of whale population as a "matter . . . of great public concern").

[22] *E.g.*, *Texas Beef Grp.*, 11 F. Supp. 2d at 862; *Auvil v. CBS 60 Minutes*, 836 F. Supp. 740, 743 (E.D. Wash. 1993), *aff'd*, 67 F.3d 816 (9th Cir. 1995); *Whelan*, 492 F. Supp. at 381; *Steaks Unlimited v. Deaner*, 623 F.2d 264, 274 (3d Cir. 1980); *Konigsberg v. Time, Inc.*, 312 F. Supp. 848, 852 (S.D.N.Y. 1970).

28

*Allen v. Scribner*, 812 F.2d 426, 431 (9th Cir. 1987) (emphasizing speech was "purposefully directed to the public" in identifying a matter of public concern); *Rambaldi*, 2003 WL 23744272, at \*8 (direction of speech at the press or public officials weighs in favor of finding public issue); *Hi-Tech Pharm.*, 277 F. Supp. 3d at 247 ("a speaker's subjective intent to create a public discourse" weighs in favor of finding public issue). There can be no question that MBAF's statements about the lobster industry are entitled to the special protection accorded to expression on public matters.

## B.    *The circumstances-of-publication exception to the group-defamation rule does not apply.*

While the district court acknowledged that statements about large groups are not actionable as a rule, it held that MBAF's statements about the lobster industry fall in one of the two recognized exceptions—namely, a situation where "the circumstances of publication reasonably give rise to the conclusion that there is particular reference to [a group] member." Add. 105 (quoting Restatement § 564A). According to the district court, the circumstances of publication here would lead a reader to understand

29

that MBAF's general statements make "particular reference" to "each and every Maine lobsterman." Add. 103–12.[23]

As interpreted and applied by the district court, the circumstances-of-publication exception to the group-defamation rule would swallow the rule itself. The district court found that the following circumstances would lead a reasonable recipient of MBAF's statements to conclude they concerned each individual lobsterman: (1) "the industry-wide nature of the statements"; (2) the fact that the statements were purportedly based upon scientific data; and (3) the fact that the statements "were not merely informational but included a call to action." Add. 107–11. Each of these circumstances is commonly true of statements about large groups; none warrants an exception to the rule against group-defamation claims.

First, "the industry-wide nature of the statements" is not a reason to disregard the group-defamation rule; *it is the reason the rule applies in the first place.* The fact that a statement relates to an entire industry does not "reasonably give rise to the conclusion [it makes] particular reference

---

[23] The district court correctly held that the small-group exception does not apply, since the lobstermen number in the thousands. Add. 107.

to" individuals. Restatement § 564A. If it did, the group-defamation rule would be toothless. Indeed, the district court inverted the rule's logic by *emphasizing* that the statements "encompassed the entire . . . lobster industry"—as if their breadth and generality is the very reason they can support claims by individuals. Add. 112. The opposite is true: "an entire industry . . . cannot sue on grounds of defamation" because "'a cause of action in defamation loses its legal foundation as the target of the defamatory statement becomes less specific.'" *Ajay Nutrition Foods*, 378 F. Supp. at 218 (quoting *Neiman-Marcus*, 13 F.R.D. at 316).

Nor is it significant in this context that MBAF purportedly based its statements on scientific data about the lobster industry as a whole. Reliance on scientific data does not transform a general statement about a large group into a particular statement about an individual member. In fact, by its very nature, scientific data elevates the aggregate over the particular; one data point cannot support a scientific finding, and many scientific conclusions admit to numerous exceptions.

Most egregious is the district court's conclusion that MBAF's statements are actionable because they included a "call to action." First,

31

it should go without saying that a call to avoid lobster from the Gulf of Maine is not a "circumstance" to suggest MBAF was referring to each lobsterman in particular. More importantly, MBAF's right to advocate a boycott is guaranteed by the First Amendment. *NAACP v. Claiborne Hardware*, 458 U.S. 886, 909–10 (1982) (noting that "speech does not lose its protected character" just because it may "coerce [others] into action"). Indeed, the fact that MBAF purposefully addressed its statements to the public weighs in favor of finding that it engaged in protected expression. *Snyder*, 562 U.S. at 454–55.

The district court discussed at length the harm MBAF's statements purportedly inflicted on the lobster industry, and described this industry as "critical" to Maine's economy. Add. 30–32, 78, 110–11. As MBAF notes, however, this alleged harm has no bearing on the threshold question of whether the statements were "of and concerning" each lobsterman. Def.-Appellant's Br. at 40–41; *see also Kirch v. Liberty Media*, 449 F.3d 388, 398 (2d Cir. 2006) (noting that a false disparaging statement about IBM would not be "a defamatory statement 'of and concerning' all of IBM's suppliers, employees and dealers, however much they may be injured as

32

a result"); *Auvil*, 836 F. Supp. at 743 (the fact that a news segment about pesticides had a "wide ranging [e]ffect" on the Washington apple industry did not undermine its status as protected speech).

In sum, the district court erred in concluding that a reasonable recipient of MBAF's statements would understand them as impugning "each and every lobsterman." Nothing in the challenged statements suggests that MBAF undertook an investigation of *each* individual Maine lobsterman and concluded that *each* individually endangers whales, and no reasonable recipient would imagine MBAF undertook such a strange and Herculean endeavor before speaking about the industry's impact. MBAF's statements concern the entire industry, without casting concrete aspersions on any individual. This case is nothing like *Conformis*, where this Court identified a clear factual basis to conclude certain statements about a class of devices did, in fact, single out a particular manufacturer. 58 F.4th at 529–30.

Our legal system recognizes the value of allowing individual people and entities to seek damages when they are harmed by false statements made with the requisite intent. At the same time, the First Amendment

33

accords the utmost protection to speech on public issues. While in some cases these interests collide, they do not here. MBAF did not defame any of the plaintiffs when it spoke in general terms about an issue of public concern, and the district court erred in denying its motion to dismiss.

If this Court were to affirm the district court, statements about an industry or profession, as well as "[s]tatements about a religious, ethnic, or political group[,] could invite thousands of lawsuits from disgruntled members of these groups claiming that the portrayal was inaccurate and thus libelous." *Mich. United*, 485 F. Supp. at 900. This would "result in the public receiving less information about topics of general concern," and endanger "First Amendment values." *Id.* (citing *Sullivan*, 376 U.S. at 288–92). As this Court warned in *Arcand,* authorizing individual group members to sue when they have not been directly defamed "would chill communication to the marrow." 567 F.2d at 1165. The Constitution does not permit such a result.

34

## CONCLUSION

Group-defamation claims threaten the principles of free expression reflected in the First Amendment, and courts have consistently rejected such claims. This Court should reverse the district court and hold that the First Amendment bars plaintiffs-appellees' group-defamation claim.

February 26, 2026

BALLARD SPAHR LLP

/s/ *Taylor Washburn*
TAYLOR WASHBURN
1301 Second Avenue, Suite 2800
Seattle, Washington 98101
Telephone: (206) 223-7000
washburnt@ballardspahr.com

LYNN OBERLANDER
1675 Broadway, 19th Floor
New York, New York 10019
Telephone: (212) 223-0200
oberlanderl@ballardspahr.com

FACUNDO BOUZAT
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-8500
bouzatf@ballardspahr.com

*Counsel for* Amici Curiae

**CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMIT**

1.  This document complies with the word limit stated in Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 5,387 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. 32(a)(6), because it has been prepared in Microsoft Word using a 14-point proportionally spaced typeface, Century Schoolbook.

DATED this 26th day of February, 2026.

/s/ *Taylor Washburn*
TAYLOR WASHBURN

*Counsel for* Amici Curiae

# CERTIFICATE OF SERVICE

I certify that on February 26, 2026, the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the First Circuit using the Court's CM/ECF system, which will send a notification to the attorneys of record in this matter.

/s/ *Taylor Washburn*
TAYLOR WASHBURN

*Counsel for* Amici Curiae